IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RICHARD BAUMGARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 04-730-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| SMURFIT-STONE CONTAINER CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

Thomas K. Doyle
BENNETT HARTMAN MORRIS & KAPLAN, LLP
111 S.W. Fifth Avenue, Suite 1650
Portland, OR  97204

   Attorney for Plaintiff

Courtney W. Angeli
Joel A. Mullin
Shana W. Sechrist
STOEL RIVES, LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR  97204

   Attorneys for Defendant

JONES, Judge:

Plaintiffs Richard Baumgardner, Christine Devine, Gary Nathan, and Mike Mitchell bring this action again defendant Smurfit-Stone Container Corporation claiming, in essence, that defendant breached its contract obligations to provide certain health benefits. As the result of earlier proceedings on defendant's motion to dismiss, four claims remain in the case. These are: (1) breach of collective bargaining agreements in violation of § 301 of the Labor Management Relations Act ("LMRA"); (2) breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"); (3) benefits due and clarification regarding future benefits under ERISA; and (4) ERISA estoppel. Defendant now seeks summary judgment (# 43) on these remaining claims. For the reasons stated below, defendant's motion is granted as to the claims of plaintiffs Devine, Nathan, and Mitchell, and is denied as moot as to plaintiff Baumgardner.[1]

## FACTUAL BACKGROUND

The background of this litigation is fully described in my December 2, 2004, Opinion and Order on defendant's motion to dismiss and will be discussed here only as necessary to explain my rulings.

Plaintiffs filed this action as a potential class action but have not sought class certification; consequently, there are only four plaintiffs. Three plaintiffs are early retirees from defendant (Gary Nathan, Mike Mitchell, and Richard Baumgardner); one is the spouse of an early retiree (Christine Devine). Three separate collective bargaining agreements ("CBA") govern plaintiffs' rights. The 1993 and 1995 CBAs govern Nathan's, Mitchell's and Devine's

---

[1] During oral argument on June 15, 2006, the parties notified the court on the record that plaintiff Baumgardner's claims had been settled.

rights and are at issue in this motion; the 1997 CBA governed Baumgardner's rights. Because Baumgardner has settled with defendant, I will not address any issues that pertain to his claims.

STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

DISCUSSION

1.  Preliminary Matters - Plaintiffs' Failure to Respond to Requests for Admission

I discuss this issue first because it affects my analysis below. After I denied portions of defendant's motion to dismiss to give plaintiffs an opportunity to develop any extrinsic evidence that might shed light on the contract provisions at issue and to amend their complaint, in September 2005, defendant sent plaintiffs a set of requests for admission. Plaintiffs failed to

respond,[2] which under Rule 36 of the Federal Rules of Civil Procedure results in "deemed" admissions. Plaintiffs have not sought leave of court to withdraw or amend their (non)response. Consequently, defendant argues, correctly, that the matters admitted by default "are conclusively established * * *." Fed.R.Civ.P. 36(b).

Plaintiffs thus have made the following significant admissions:

- "Admit that defendant did not make any oral statement(s) regarding the continuation of benefits to plaintiffs."

- "Admit that exclusive of the statements contained in the [CBAs], plaintiffs are not aware of any statements, written or oral, supporting the claims in their First Amended Complaint."

- "Admit that exclusive of the [CBAs], plaintiffs are not aware of any documents supporting the claims in their First Amended Complaint."

Importantly, admissions by default are binding and cannot be explained away or contradicted by other evidence, even at the summary judgment stage.[3] See Schwarzer, Tashima & Wagstaffe, FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2005), ¶ 11:811 et seq and the cases cited therein.

2.   Nathan's, Mitchell's, and Devine's § 301 Claims

The 1993 CBA, which pertains to Devine, and the 1995 CBA, which pertains to Nathan and Mitchell, both contain a grant of group medical coverage. As relevant, both the 1993 and the 1995 CBAs provide:

---

[2] Even after defendant notified plaintiffs' counsel by letter that their response was overdue.

[3] As noted below, plaintiffs nonetheless have offered three items of "extrinsic evidence" in an effort to create a material issue of fact. Although I need not consider the evidence, I discuss it briefly in the applicable sections below.

4 - OPINION AND ORDER

GROUP COVERAGE FOR EARLY AND DISABILITY RETIREES

> Effective January 1, 1989, early retirees between the ages of 55 and 65 and disability retirees at any age prior to age 65 and their eligible dependents as previously defined, will be covered under the Comprehensive Medical Plan until the retiree reaches age 65.
>
> If the spouse is younger than the retiree, coverage under the HMO Plan will be provided for the spouse and eligible dependent children until the spouse reaches age 65.  In the event of the retiree's death before the spouse reaches age 65, the Company will continue coverage under the HMO Plan for the spouse and eligible dependent children until the spouse reaches age 65 or remarries whichever occurs first.  * * *.

Declaration of Shana Sechrist in Support of Defendant's Motion, Exhs. 5, p. 23 (1993 CBA) and 6, p. 18 (1995 CBA).  Both CBAs also contain the following reservation of rights language:

> It is hoped that this Plan will be continued indefinitely but, as is customary in group plans, the Plan Administrator may terminate, suspend, withdraw, amend or modify the Plan in whole or in part at any time, subject to the applicable provisions of the group insurance policy.

Id., Exh. 5, p. 24; Exh. 6, p. 18.

In general, vested benefits under a CBA cannot be altered without the beneficiaries' consent.  Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co., 404 U.S. 157, 181 n.20 (1971).  If, however, the above-quoted reservation of rights language in the CBAs unambiguously reserves the right to modify health benefits, then plaintiffs have no vested rights and no § 301 claim will lie.  Bower v. Bunker Hill Co., 725 F.2d 1221, 1223 (9th Cir. 1984).  Extrinsic evidence may be consulted in determining whether a CBA is or is not ambiguous.  E.g., Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1517-18 (9th Cir. 1985).

Plaintiffs have admitted that there is no extrinsic evidence outside the CBAs themselves. Notwithstanding those admissions, and without seeking leave of court to withdraw or modify

5 - OPINION AND ORDER

their admissions, in response to defendant' motion for summary judgment plaintiffs attempt to offer some extrinsic evidence to support their interpretation of the CBAs.  The evidence is:

      a.      Nathan, Mitchell, and Devine each testify by affidavit that at his or her retirement meeting, defendant's representative told each that he or she "would receive the health insurance benefits, at the same level, until each of us turned 65."  As discussed above, those statements are precluded by operation of Rule 36(b), and also conflict with their sworn deposition testimony.  See Defendant's Reply, pp. 13-15, and Declaration of Shana Sechrist, Exhs. 5, 6, and 7.  In the Ninth Circuit, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony," Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991), especially in this case in light of the operation of Rule 36(b).

      b.      Plaintiffs point to a letter dated April 3, 1995, from defendant's labor relations counsel to the union representative who negotiated the 1995 CBA.  As relevant, that letter states that if a covered retiree moves out of the geographic area of the HMO (health maintenance organization) after January 1, 1996, "the Company will provide continuing coverage under the model Company plan then in existence, * * * at the Company's expense."  Sworn Statement of Thomas Doyle, Exh. 1 (emphasis added).  Plaintiffs read this language as demonstrating defendant's intent to continue medical benefits at the *same level* as before, but as defendant points out, that language supports its interpretation of the reservation of rights language, not plaintiffs' interpretation.  The language plainly contemplates that the plan "in existence" when a retiree moves out of the geographic area of the HMO might be different than the plan in existence at the time of retirement.  Further, nothing in the letter suggests a promise by defendant

6 - OPINION AND ORDER

to maintain benefits at the same level or a level equivalent to that in existence at the time of retirement.

   c.  Plaintiffs offer an excerpt from a letter from defendant's labor relations counsel to the union representative negotiating the 1997 CBA. The 1997 CBA is not at issue in the present motion, and the Union representative, Ken Hardwick, was not part of negotiations in 1993 and 1995. Assuming without deciding that if admissible, the letter would have some relevance to the present dispute, the letter states:

> During the waning moments of 1997 bargaining, and after the Company's presentation of our Final proposal, the Union again reminded us of its inability to "live with" the following language which appears at page 84 of our insurance language attachments:
>
>> "2. HOW BENEFITS ARE DETERMINED TO BE PAID
>>
>> "The Company will provide an HMO benefit plan designated by the HMO as a $10 Office visit Plan which has been approved for 1997 HMO Offerings by the state governing body. This level of plan benefits will remain in place <u>unless the HMO</u> or the state or federal law requires plan changes. * * *."
>
> Although we are unwilling to delete or amend this language, we offer the following interpretation of the above-quoted language to ease the Union's stated concerns that the above language permits an HMO carrier to change negotiated group insurance levels. <u>Ironically, this bargaining stalemate is over an issue not within the control of either the Union or the Company</u>.
>
> We have been advised by our Group Insurance Executives that the intent of the above-quoted language is allowance for freedom in plan design where the HMO initiates a change.[4] <u>The Company will not request that the HMO increase co-payments or otherwise remove or reduce a benefit.</u> Rather, we are attempting to balance the contract arrangements between the HMO and the Company and between the Company and the Union. In any event, and finally, the above-quoted language is quite similar to pages 95-96 of the present contract which read as follows:

---

  [4]  <u>See</u> footnote 2.

7 - OPINION AND ORDER

> "13. GENERAL
>
> This is a SUMMARY meant to be easily understood and read. It is not meant to be a detailed description to cover every eventuality and individual situation, the terms of the Group Contracts will govern.
>
> It is hoped that the Plan will be continued indefinitely but, as is customary in group plans, the Plan Administrator may terminate, suspend, withdraw, amend or modify the Plan in whole or in part ast any time, subject to the applicable provisions of the group insurance policy."
>
> <u>Finally, if the HMO, on its own initiative, alters the benefit plan design in a manner which the Union interprets as a benefit(s) reduction, we will, upon written request from the Union, introduce a similar benefit of a comparable actuarial value. If there is a dispute regarding the actuarial comparability of the replacement benefit, that dispute can be raised in the grievance/arbitration procedure. Alternatively, such a dispute regarding comparability of benefits(s) value can be submitted to a mutually acceptable health insurance industry consultant (or consultants) for resolution. In our opinion, a dispute of this nature can be better resolved with mutually acceptable industry experts than with a labor arbitrator whose expertise generally lies elsewhere.</u>

Sworn Statement of Ken Hardwick, Exh. 1 (emphasis in original).

Plaintiffs admit that these statements relate to the 1997 bargaining negotiations, not the 1993 and 1995 negotiations. Their theory concerning the letter is that it "indicates" the interpretation defendant gave to the reservation clauses in the CBAs at issue. Plaintiffs propose that the 1997 letter shows that the reservation clause merely reserved "freedom in plan design," but does not permit a reduction in the total benefit. <u>See</u> Plaintiffs' Memorandum in Response, pp. 14-15. In point of fact, however, the explanation in the last paragraph contemplates that the insurer might reduce benefits, and sets out an approach to determining an appropriate replacement benefit (an approach not mentioned in the 1993 and 1995 documents).

8 - OPINION AND ORDER

Defendant explains that the letter actually underscores the exact dilemma it faced and the reason it would not commit to maintaining the same level of benefits in the 1993 and 1995 CBAs regardless of changes by the HMO: Defendant had no control over changes made by the insurer. Consequently, defendant contends that the letter supports its interpretation of the 1993 and 1995 CBAs to unambiguously reserve the right to modify, etc., the health benefit.

Because plaintiffs are bound by their admissions, I need not and do not consider the letter and the other "extrinsic evidence" in interpreting the 1993 and 1995 CBAs. I nonetheless make the following observations concerning the 1997 letter. First, Mr. Sheer, who wrote the letter, was not involved in the 1993 and 1995 negotiations. Second, I agree with defendant that the letter underscores the very dilemma that ultimately lead to this lawsuit: What can/must defendant do if the insurance carrier changes the coverage or refuses to provide coverage? By reserving the right to terminate, suspend, withdraw, amend or modify the Plan, defendant gave itself room to alter coverage without breaching the CBAs.

In the absence of relevant extrinsic evidence, as here, matters of contract interpretation should be decided by the court as a matter of law. Council of Laborers v. Pittsburgh-Des Moines Steel, 69 F.3d 1034, 1036 (9th Cir. 1995)(when credibility of extrinsic evidence is not at issue, contract interpretation is a question of law). I find that the disputed language in the 1993 and 1995 CBAs unambiguously reserves to defendant the right to modify, etc., the health benefits coverage.[5] Consequently, plaintiffs Nathan, Mitchell, and Devine have no vested benefits and,

---

[5] I note that defendant continued to provide benefits, just not the benefits plaintiffs wanted.

9 - OPINION AND ORDER

accordingly, no valid § 301 claim.  Defendant's motion for summary judgment is, therefore, granted as to these plaintiffs' § 301 claim.

3.	All Plaintiffs' ERISA Estoppel Claim

In the Ninth Circuit, a claim for ERISA estoppel requires pleading and proof of oral representations concerning the interpretation of a Plan.  Pisciotta v. Teledyne Industries, Inc., 91 F.3d 1326, 1331 (9th Cir. 1996).  Each plaintiff admitted in deposition that there were no oral representations made, and each plaintiff has admitted (by default) that there were no oral representations.  Plaintiffs now attempt to circumvent those binding admissions through their affidavits, but their contradictory testimony is excluded.  Defendant's motion for summary judgment is granted on this claim.

4.	All Plaintiffs' ERISA Breach of Fiduciary Duty Claim

In my Opinion and Order on defendant's earlier motion to dismiss, I dismissed plaintiffs' state common law claim for breach of fiduciary duty, noting that

> if plaintiffs' theory is that the fiduciary obligation arises under the 1995 or 1997 Agreements, their claims are preempted by § 301 of the LMRA.  "A cause of action that requires a court to ascertain whether the CBA in fact placed 'an implied duty of care' . . . and the 'nature and scope of that duty' involves the interpretation of the CBA and hence is preempted."  * * *

Opinion and Order, pp. 11-12.  Plaintiffs evidently took that as a cue to allege a claim for breach of fiduciary duty related to the ERISA Plan itself.  As defendant points out, however, where plaintiffs allege a breach of contract claim under ERISA that provides for an adequate remedy, there is no valid claim for breach of fiduciary duty.  See, e.g., Forsyth v. Humana, Inc., 114 F.3d 1467, 1475 (9th Cir. 1997)(relief under [ERISA] section 502(a)(3) is not available when section 502(a)(1) provides an adequate remedy); Bowles v. Reade, 198 F.3d 752, 759-60 (9th

10 - OPINION AND ORDER

Cir. 1999)(same). Plaintiffs' claim is for breach of the welfare plan, i.e., breach of contract. That they cannot prevail on the contract claim does not revive the fiduciary duty claim. Consequently, defendant is entitled to summary judgment on plaintiffs' claim for breach of ERISA fiduciary duty.

5.  Baumgardner's Claims

As mentioned, the parties have settled plaintiff Baumgardner's claims. Defendant's motion is, therefore, denied moot as to this plaintiff. The court will enter a 30-day dismissal order as to Baumgardner to permit the parties to finalize the settlement documents.

## CONCLUSION

Defendant's motion for summary judgment (# 43) is GRANTED as to plaintiffs Nathan, Mitchell, and Devine, and DENIED AS MOOT as to plaintiff Baumgardner. Any other pending motions are denied as moot.

DATED this 21st day of June, 2006.

                                                /s/ Robert E. Jones
                                               ROBERT E. JONES
                                               U.S. District Judge